(89 App. Div. 21.)

## MULLEN v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department.   December 11, 1903.)

**1. MASTER AND SERVANT—INJURY—EVIDENCE.**

Evidence *held* to show, in view of the physical facts disclosed, that a servant knew or should have known the conditions surrounding the place where he worked.

**2. SAME—CONTRIBUTORY NEGLIGENCE.**

Where the physical facts showed that a servant knew or should have known of the conditions surrounding the place where he worked, he was guilty of contributory negligence in not avoiding the danger caused thereby.

Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by Michael Mullen against the Metropolitan Street Railway Company. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Bartow S. Weeks, for appellant.

Edward B. LaFetra, for respondent.

HATCH, J.   At the corner of 146th street and Lenox avenue the defendant keeps and maintains a building for the storage of cars. In the building are 14 pits, so called, upon each side of which is placed the rails for the cars to run upon.   These pits are about 4½ feet deep, about 4 feet 9 inches wide, and about 100 feet long.   They were lined with cement, were smooth upon the bottom, except in pits Nos. 10–14, inclusive, where there was placed a transverse wall extending across the bottom of the pit, about 2 feet wide and 18 inches high.   This wall did not exist in any of the other pits.   The reason for its construction is not disclosed.   The pits were separated by platforms placed upon uprights, which furnished a support for the rails and separated the pits, although they were open underneath, and, in fact, the floor space was wholly open, save as it was divided by the upright platforms between the car tracks.   The cars were run into the house from Lenox avenue to a turntable situated in the building, and from this turntable were distributed over the various tracks connected therewith.   The fixed electric power which operated the cars in the street did not enter the house.   The cars were usually carried into the turntable by their own momentum, obtained by applying extra power as they left the street.   The process by which the cars were run out into the street from the house was denominated "wiring out," the electric power being carried by movable wires, 20 to 30 feet long.   The wiring out was performed by a man who descended into the pit underneath the car, attached the wires to the plow of the car, thus communicating the power, the motorman turned it on in the usual way, and the person in the pit

¶ 2. See Master and Servant, vol. 34, Cent. Dig. § 706.

held the wires against the plow, walking along with the car as far as the wires extended, or until the momentum became sufficient to carry the car to the street, where it came in contact with the permanent wires used in operating the cars. The plaintiff had been in the employ of the defendant at this house a little over eight weeks. All except 2½ days he was employed as a sweeper, his duties being to sweep off the platforms which separated the pits, and from time to time assist about cleaning out the pits. For 2½ days he had been engaged in wiring out the cars in the manner specified. On the 9th day of March, 1900, he was directed by the foreman in charge of the house to go into the pit No. 13, in which was the transverse wall, and instruct one Benzinger how to wire out cars. The car which plaintiff was directed to instruct Benzinger upon was situated over pit 13, from 1½ to 2 car lengths removed towards the front from the turntable. Between the car and the front of the building it was all open. Plaintiff descended into the pit with Benzinger, applied the wires to the plow of the car, notified the motorman of the application, the motorman turned on the power to the car, the plaintiff walked along under the car for from 3 to 4 yards, when he came in contact with the wall, stumbled over it, hit his head against the bottom of the car, threw out his hands to prevent his falling, when his right arms went out onto the rail, where he received the injuries for which he now seeks to recover damages. The plaintiff testified that he had never had occasion during the time he was employed in the building to enter the pit in which he received his injury, or any of the other pits where the transverse wall existed; that he had no knowledge of its existence, and was never informed concerning it, and when he entered the pit did not discover it until he stumbled over it. He further testified, and in this respect was corroborated by the witness Benzinger, that it was dark underneath the car, and he could not see, and while it appeared that there were electric bulbs in the pits, which could be turned on and furnish light whenever needed, plaintiff testified that he did not know how to turn them on and had received no instructions concerning them. Plaintiff also testified that he was never instructed how to wire out cars, but that he had learned the process by watching others. Upon this subject it is evident, however, that he was fully informed concerning the method of wiring out—sufficiently so to give instructions to others unaquainted with it. It is not claimed, however, that the defendant was guilty of any negligence in the method which it used, or that it is chargeable with negligence for any failure to instruct the plaintiff therein, or that its liability in this action can be predicated thereon. The claim of the plaintiff is upon these facts: That the defendant was guilty of negligence in failing to furnish a safe place in which to perform the work, in that it maintained in the bottom of this pit the transverse wall, and omitted to give the plaintiff any information concerning it; and, as it was dark underneath the car, the plaintiff was unable to discover it, was not informed of its existence, in consequence of which the defendant failed in its obligation to furnish for the plaintiff a safe place in which to perform his work.

It seems to be well settled that a servant does not assume risks

which are not known to him, but which are or should be known to the master. The servant assumes such risks as are incident to his employment after the master has discharged the obligation of reasonable care to protect the servant, or where the situation is open and obvious, and of which the servant in the exercise of care may be as well informed as the master. Eastland v. Clarke, 165 N. Y. 420, 59 N. E. 202. In the present case it seems clear that if the plaintiff was without knowledge of the existence of the transverse wall, and that the pit when he entered it was so dark that he was not able to discover it, a condition is created where the master would be chargeable in the exercise of reasonable care with the obligation of informing the plaintiff of the existence of the obstruction, or of giving him such instruction as would enable the plaintiff to make use of the lights placed in the pits; and if the jury were authorized to find upon the evidence the existence of this condition, then they were authorized to find the defendant guilty of negligence in this respect, and no error would be committed in submitting the case to the jury. The record, however, presents certain physical features established by the evidence, and which the oral testimony in no wise impugns. The accident happened about 2 o'clock in the afternoon of the 9th of March. The condition of the atmosphere is not disclosed, but it is testified by the witness Benzinger, called by the plaintiff, that the pit was open to the rear of the car being wired out, a car length and a half; that in front of the car there was no obstruction between it and the exit of the building, and that the pit beyond the car was entirely open to the light, and that light sufficient came in from the side of the car in the space of about 2 feet, to which the car was raised above the track to enable them to see to apply the wires; that practically the whole front of the building was open; that windows were in the sides of the building, and that light came into the same from three sides, and that there was nothing to obstruct the vision from the car to Lenox avenue; and that the car was so situated as to receive light from a large door through which the car ran. The building itself was an open space, with no other obstruction than has heretofore been stated, and it is evident that the light which came into the building from the front and the sides left that part of the pits not covered by the car light and open, so that the eye in glancing along the pit could see the entire space with clearness, and, of course, under such circumstances, could discover any obstruction which existed therein in the act of looking; and it is clear that the plaintiff was charged with the duty of being attentive to his surroundings, and is chargeable with such information as he would receive by so doing.

The testimony establishes that the plow was either in the center or the front of the car. Benzinger states that it was his recollection that the plow was upon the forward truck. Plaintiff's testimony is to the effect that after applying the wires to the plow he traveled a distance of 3 or 4 yards before coming in contact with the wall. It is evident from this testimony that the transverse wall must have been at the immediate front of the car, for the distance traveled before the

plaintiff came in contact with it shows that it could not have been under the car at the time when the car was started. The testimony of the plaintiff is that it was dark in the pit, but this refers to the space under the car. It could not have been dark in view of the light which entered the building in that part of the pit, which was open to the light; and, even though it was dark under the car, that would not prevent the plaintiff from seeing the wall if he used his eyes. As the wall was in the light, the plaintiff was better able to discover it from his place in the dark; and if in the exercise of reasonable care he could have discovered it by the use of his eyes, then he was chargeable with knowledge of its existence, and would need no instruction to inform him that he must not stumble over it. Such seems to have been the situation fairly deducible from the evidence; and, if such be the fact, we are of opinion that the jury should have found that the plaintiff knew of or should have discovered the presence of the wall, and that if he failed to avoid it, with knowledge of its existence, his own remissness is responsible for the injuries which he received. Upon the state of this record, therefore, we are constrained to reverse this judgment.

The case of Eastland v. Clarke, supra, is not an authority against this conclusion. Therein the proof authorized the jury to find that the cellar into which the plaintiff entered was so dark as to prevent a discovery of the well, or hole in the floor, and, as it was not obvious and open, the duty of giving information concerning its existence rested upon the defendant, and that the plaintiff could not be held to have assumed the risk of its existence, or be guilty of contributory negligence in failing to discover it. The discussion already had makes the distinction between it and the present case readily apparent.

It follows that the judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur, except PATTERSON, J., who dissents.

PATTERSON, J. I dissent. I do not understand the evidence as Mr. Justice HATCH does. The plaintiff descended into the pit in the rear of the car to be "wired out." The jury must have found that he did not know that the wall crossed the pit in front of the car; that he was in the dark, and his view was obscured by the car in front of him. He was not bound to anticipate that the pit might be unsafe; and, when he began work under the car, he was authorized to believe that the pit was a safe place to work in, he neither knowing nor having been informed to the contrary.